UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 20-14414-CIV-CANNON

JORGE RIVERA,

      Plaintiff,

v.

DIOCESE OF VENICE IN FLORIDA, INC.
and ST. CATHERINE PARISH IN SEBRING, INC.

      Defendants.

_____/

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Defendants Diocese of Venice in Florida, Inc. ("Diocese") and St. Catherine Parish in

Sebring, Inc. ("Parish") (collectively, "Defendants"), hereby move this Court to dismiss Plaintiff's

First Amended Complaint ("FAC") with prejudice for failure to state a claim upon which relief

can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  In his FAC, Plaintiff

purportedly asserts claims for hostile work environment under Title VII of the Civil Rights Act of

1964 ("Title VII"), 42 U.S.C. § 2000e-2 *et seq.* and the Florida Civil Rights Act ("FCRA").[1]  As

explained in more detail below, because Plaintiff is a former ministerial employee of the

Defendants, his claims are barred by the ministerial exception.

_____

[1] In the introduction paragraph of his FAC, Plaintiff appears to state that he is alleging a retaliation
claim.  However, this statement was clearly made in error as the rest of the FAC is silent as to any
such claim.  Likewise, Plaintiff erroneously states that the Court has jurisdiction over his third and
fourth causes of action notwithstanding the fact that his FAC only contains two counts.

## **BACKGROUND**

Plaintiff initiated this action on November 23, 2020 by filing a complaint against Defendants wherein he asserted claims for hostile work environment and retaliation under Title VII and the FCRA.  Doc. 1.  On January 29, 2021, Defendants moved to dismiss Plaintiff's initial complaint on the grounds that his claims were precluded by the ministerial exception and that, in any event, he did not plausibly allege claims for hostile work environment and retaliation.  Doc. 16.  The Court held a hearing on Defendants' motion to dismiss on March 17, 2021 (Doc. 27), and ultimately deferred ruling on the motion pending Plaintiff's submission of an amended complaint. Doc. 28.  On April 5, 2021, Plaintiff filed his FAC in which he repled hostile work environment claims under Title VII and the FCRA, but no longer asserted claims for retaliation.  Doc. 29.

In his FAC, Plaintiff alleges that he was "unlawfully subjected to a hostile work environment because of his race and color, black."  *Id.* ¶¶ 72, 75.  Plaintiff's claims are apparently premised on comments allegedly made to Plaintiff or in his presence by the Parish's priest, Father Jose Gonzalez, during Plaintiff's tenure as principal of the St. Catherine Catholic School (the "School").  As with his initial complaint, Plaintiff attempts to support his claims with vague allegations, all of which lack specific dates.  In particular, he alleges that Father Gonzalez: (1) stated that Plaintiff would "bring 'color' to the school;"[2]; (2) sang a song in Spanish and English that included a racial slur;[3] (3) referred to chocolates as "chocolates for the chocolate principal;"[4] and (4) handed him a figurine of a black saint stating "looks like you."[5]  In sum, Plaintiff alleges that Father Gonzalez made five offensive utterances over the course of nearly two and a half years.

---

[2] Doc. 29, ¶ 30.

[3] *Id.* ¶¶ 34, 38–39.

[4] *Id.* ¶ 40.

[5] *Id.* ¶ 42.

7365984v.1

According to Plaintiff, in September or October of 2018, he complained to Defendants' HR Director, Ellen Stine, about the "'chocolate principal' comment and the singing of the racist song," but "[n]othing was done." *Id.* ¶¶ 53–54, 56.  Thereafter, Plaintiff claims Father Gonzalez mistreated him by holding meetings without him, supervising and disciplining his staff, and "sharing lies about [Plaintiff] with Fr. Gonzalez and the Diocese concerning his job performance." *Id.* ¶ 57.[6]  Plaintiff voluntarily resigned on December 4, 2018.  *Id.* ¶ 59.

Plaintiff fails to state claims upon which relief can be granted.  Even assuming the facts alleged in the FAC are true, the ministerial exception bars Plaintiff's claims.  As such, the FAC should be dismissed with prejudice.[7]

## **LEGAL STANDARD**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint because the plaintiff has "fail[ed] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A Rule 12(b)(6) motion to dismiss is the proper vehicle for dismissing a complaint under the ministerial exception because "the exception operates as an affirmative defense to an otherwise cognizable claim, not a jurisdictional bar."  *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 195 n.4 (2012).  "That is because the issue presented by the exception is 'whether the allegations the plaintiff makes entitle him to relief,' not whether the court has 'power to hear [the] case.'"  *Id.* (quoting *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 254 (2010) (alterations in original)).

---

[6] Plaintiff fails to explain his puzzling allegation that Father Gonzalez lied to himself about Plaintiff's job performance.

[7] As Plaintiff has been granted "one final opportunity to amend his Complaint," Doc. 28, any dismissal of his claims should be with prejudice.  *See Sorota v. Sosa*, 842 F. Supp. 2d 1345, 1351 n.4 (S.D. Fla. 2012) (citing Fed. R. Civ. P. 15(a)(1)–(2) ("The Court dismisses this claim with prejudice because [plaintiff] has already amended his complaint as a matter of course")).

## ARGUMENT

**A.      The ministerial exception broadly applies to all employment claims brought by a ministerial employee.**

The First Amendment provides, in part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. These so-called "Religion Clauses" have long been interpreted as prohibiting the government from interfering with religious organizations' internal governance. *See, e.g.*, *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 720 (1976) ("[C]ivil courts are bound to accept the decisions of the highest judicatories of a religious organization of hierarchical policy on matters of discipline, faith, internal organization, or ecclesiastical rule, custom, or law."); *Kedroff v. St. Nicholas Cathedral*, 363 U.S. 94, 116 (1952) (explaining that religious organizations have the "power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine.").

The ministerial exception was created to protect religious groups' right to self-govern. *See Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2060 (2020). As the Eleventh Circuit aptly explained, "the exception … continues a long-standing tradition that churches are to be free from government interference in matters of church governance and administration." *Gellington v. Christian Methodist Episcopal Church, Inc.*, 203 F.3d 1299, 1304 (11th Cir. 2000) (internal citations omitted). Under the exception, a religious employer is not subject to claims under employment discrimination laws, including Title VII, by employees who perform religious functions. *See Our Lady of Guadalupe Sch.*, 140 S. Ct. at 2060 ("Under this rule, courts are bound to stay out of employment disputes involving those holding certain important positions with churches and other religious institutions."); *see also Hosanna-Tabor*, 565 U.S. at 188 (finding that

4

7365984v.1

the ministerial exception "precludes application of legislation to claims concerning the employment relationship between a religious institution and its ministers.").

Given the risk of entanglement with religious organizations' internal affairs, courts have broadly construed the ministerial exception.  For instance, the Eleventh Circuit endorsed a broad view of the exception in *Gellington* where it held that "the Free Exercise and Establishment Clauses of the First Amendment prohibit a church from being sued under Title VII by its clergy." 203 F.3d at 1304; *see also McClure v. Salvation Army*, 460 F.2d 553, 560–61 (5th Cir. 1972) ("We therefore hold that Congress did not intend, through the nonspecific wording of the applicable provisions of Title VII, to regulate the employment relationship between church and minister.").[8] Other Circuit Courts of Appeals have similarly construed the scope of the exception.  *See Fratello v. Archdiocese of N.Y.*, 863 F.3d 190, 203–04 (2d Cir. 2017) (citing *Hosanna-Tabor*, 565 U.S. at 194) ("[T]he First Amendment does not tolerate a judicial remedy for any minister claiming employment discrimination against his or her religious group, regardless of the group's asserted reason (if any) for the adverse employment action."); *Skrzypczak v. Roman Catholic Diocese Of Tulsa*, 611 F.3d 1238, 1246 (10th Cir. 2010) (holding that the ministerial exception applies to "any Title VII action brought against a church by one of its ministers"); *Alicea-Hernandez v. Catholic Bishop of Chicago*, 320 F.3d 698, 704 (7th Cir. 2003) ("The 'ministerial exception' applies without regard to the type of claims being brought.").

As such, it logically follows that courts have applied the ministerial exception to hostile work environment claims.  *See, e.g.*, *Skrzypczak*, 611 F.3d at 1246 (Title VII hostile work environment claim barred by ministerial exception); *Alicea-Hernandez v. Catholic Bishop of*

---

[8] The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981.  *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

*Chicago*, 320 F.3d 698, 704 (7th Cir. 2003) (same); *Ogugua v. Archdiocese of Omaha*, No. 8:07CV471, 2008 WL 4717121, at *5 (D. Neb. Oct. 22, 2008) (same); *Gomez v. Evangelical Lutheran Church in Am.*, No. 1:07CV786, 2008 WL 3202925, at *2–3 (M.D.N.C. Aug. 7, 2008) (same); *Preece v. Covenant Presbyterian Church*, No. 8:13CV188, 2015 WL 1826231, at *7 (Apr. 22, 2015 D. Neb.) (same).

While the Eleventh Circuit has not yet had the opportunity to rule on this specific issue, its broad interpretation of the ministerial exception suggests it would similarly apply the exception to hostile work environment claims.  The Eleventh Circuit's rationale in *Gellington* was echoed in subsequent decisions by its sister circuits when they applied the exception to harassment claims. For example, the Eleventh Circuit explained that:

> [A]pplying Title VII to the employment relationship between a church and its clergy would involve excessive government entanglement with religion as prohibited by the Establishment Clause of the First Amendment. Investigation by a government entity into a church's employment of its clergy would almost always entail excessive government entanglement into the internal management of the church. A church's view on whether an individual is suited for a particular clergy position cannot be replaced by the courts' without entangling the government in questions of religious doctrine, polity, and practice.

*Gellington*, 203 F.3d at 1304 (internal citations and quotation marks omitted).  Likewise, in applying the ministerial exception to a Title VII hostile work environment claim, the Seventh Circuit reasoned that:

> [A]n investigation and review of such matters of church administration and government as a minister's salary, his place of assignment and his duty, which involve a person at the heart of any religious organization, could only produce by its coercive effect the very opposite of that separation of church and State contemplated by the First Amendment.

*Alicea-Hernandez*, 320 F.3d at 703 (quoting *McClure*, 460 F.2d at 560) (alteration in original); *accord Skrzypczak*, 611 F.3d at 1245.

6

Notably, the reasoning of the Seventh, Tenth, and Eleventh Circuits is shared by the Supreme Court.  Similar to these circuits' reasons for not applying Title VII to the minister-church employment relationship, the Supreme Court has distinguished the ministerial exception's application to claims arising out of such a relationship from its application to claims that do not depend upon the minister-church employment relationship.  *See Hosanna-Tabor*, 565 U.S. at 196. In *Hosanna-Tabor*, the Supreme Court described this distinction stating:

> The case before us is an employment discrimination suit brought on behalf of a minister, challenging her church's decision to fire her. Today we hold only that the ministerial exception bars such a suit. *We express no view on whether the exception bars other types of suits, including actions by employees alleging breach of contract or tortious conduct by their religious employers.*

*Id.* (emphasis added).  Therefore, while ministerial employees may pursue common law tort claims, such as assault or battery, against their employers, they are barred from asserting Title VII claims as these claims arise out of the church-minister employment relationship and thus fall squarely within the ministerial exception.

**B.      In any event, Plaintiff's allegations will require the Court to impermissibly entangle itself into Defendants' internal governance.**

Even if the ministerial exception does not bar all Title VII claims, the exception bars the specific claims raised by Plaintiff in this case.  As discussed above, the ministerial exception is based on the First Amendment's protection of religious organizations' right to self-govern.  By their very nature, Plaintiff's hostile work environment claims implicate Defendants' self-governing rights such that they will inevitably entangle the Court in Defendants' internal governance.  To establish his hostile work environment claims, Plaintiff must prove that he was subjected to harassment that was "severe or pervasive enough to alter the terms and conditions of his employment and create a discriminatorily abusive working environment."  *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1248–49 (11th Cir. 2014) (internal citations omitted).  Additionally,

7365984v.1

in order to hold Defendants liable, Plaintiff must establish that such an environment was created "because of actions taken by either a supervisor or a coworker." *Id.* at 1249. "An employer is strictly liable for supervisor harassment that 'culminates in a tangible employment action....'" *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). However, in the absence of a tangible employment action, the employer may raise the *Ellerth/Faragher* affirmative defense under which it must prove: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.*; *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *accord Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d 1305, 1313 (11th Cir. 2001).[9] Similarly, if the harassment was caused by a co-worker, a plaintiff has the burden to prove that the employer knew or should have known of the harassment and failed to take reasonable steps to prevent or correct the harassment. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1278 (11th Cir. 2002).

Here, the Court cannot examine Plaintiff's hostile work environment claims without inquiring into Defendants' internal governance and doctrine. For one, the very nature of Plaintiff's claims will require judicial scrutiny of the conditions of his employment. *See Gomez*, 2008 WL 3202925, at *2 n.1 ("Because Plaintiff must show that the harassment was sufficiently severe or pervasive to alter the conditions of employment, inquiry into the conditions of employment and, therefore, church doctrine in general, is unavoidable.") (internal citations and quotation marks omitted). Scrutiny of Plaintiff's working conditions is further guaranteed by his allegations that Father Gonzalez harassed him by "essentially running the school without [him]," including by

---

[9] It is unclear from Plaintiff's FAC whether he is claiming that Father Gonzalez was his supervisor or co-worker. Regardless, the analysis is very similar—the only real difference is who carries the burden of proof.

8

holding meetings without him and supervising and disciplining his staff.  Doc. 29, ¶ 57.  These allegations directly implicate Defendants' right to self-govern without judicial interference.  *See Our Lady of Guadalupe*, 140 S. Ct. at 2060 (explaining that a church's right to independently govern "requires the authority to … *supervise* … a minister without interference by secular authorities.") (emphasis added); *Alicea-Hernandez*, 320 F.3d at 700, 704 (affirming dismissal of Title VII hostile work environment claim where plaintiff alleged she was excluded from management meetings, denied resources necessary to perform her job, and constructively discharged); *Gomez*, 2008 WL 3202925, at *9 (dismissing Title VII hostile work environment claim and finding that "many of Plaintiff's allegations relate to office space, meeting attendance, presentation of work plans, telephone messages, leadership selection, lack of communication, and the approval of religious groups," and therefore, "relate directly to internal church governance.").  As the Eleventh Circuit's predecessor recognized:

> [A]n investigation and review of such matters of church administration and government as a minister's salary, his place of assignment and his duty, which involve a person at the heart of any religious organization, could only produce by its coercive effect the very opposite of that separation of church and State contemplated by the First Amendment.

*McClure*, 460 F.2d at 560.

Plaintiff's allegations that Father Gonzalez uttered a few racial slurs do not transform this case into one which may be examined without running afoul of the First Amendment.  These alleged statements are inextricably intertwined with Plaintiff's other allegations of harassment, including his allegations that:

- A teacher at the School was terminated without Plaintiff's knowledge or input;[10]

---

[10] Doc. 29, at ¶ 27.

- The Diocese's Superintendent of Catholic Education, Benjamin Moore, subjected Plaintiff to "additional scrutiny and micromanagement";[11]
- Superintendent Moore told Plaintiff, "If you don't improve you will not be renewed.";[12]
- Plaintiff's performance was "exemplary";[13]
- Plaintiff's role was being "minimized" by Father Gonzalez and Superintendent Moore;[14]
- In response to Plaintiff's complaint, "[n]othing was done" by Defendants;[15]
- Father Gonzalez held meetings without Plaintiff, supervised and disciplined Plaintiff's staff, and "shar[ed] lies about [Plaintiff] with Fr. Gonzalez and the Diocese concerning his job performance.";[16] and
- At the time of Plaintiff's resignation, "[a]ny reasonable person would have resigned under the same circumstances."[17]

*See Gomez*, 2008 WL 3202925, at *2 n.1.  Deciding whether each of these actions constitute actionable harassment requires an inquiry into Defendants' internal governance and doctrine.  *Id.*; *see also Gellington*, 203 F.3d at 1304 ("Investigation by a government entity into a church's employment of its clergy would almost always entail excessive government entanglement into the internal management of the church.").  The Court would be forced to examine whether supervisory acts were necessary to carry out the governance of the Diocese and the Parish, or were unnecessary and merely motivated by Plaintiff's national origin.  Each of these inquiries infringes on the First Amendment.

Furthermore, determining whether Defendants are liable for harassment requires an examination of whether Defendants took reasonable steps to prevent and correct the harassment once they became aware of it.  In other words, the Court will have to assess whether Defendants

---

[11] *Id.* at ¶ 45.

[12] *Id.* at ¶ 47.

[13] *Id.* at ¶ 48.

[14] *Id.* at ¶ 49.

[15] *Id.* at ¶ 56.

[16] *Id.* at ¶ 57.

[17] *Id.* at ¶ 60.

10

properly disciplined and/or corrected Father Gonzalez during his employment.  This inquiry necessarily goes to the heart of Defendants' operations.  *See Skrzypczak*, 611 F.3d at 1245–46.

Accordingly, regardless of whether the Court views the ministerial exception as a categorical bar to all employment discrimination claims, it cannot analyze Plaintiff's claims without entangling itself into constitutionally protected subject matter.  Therefore, because Plaintiff qualifies as a "minister,"[18] his claims[19] must be dismissed.

## CONCLUSION

WHEREFORE, Defendants respectfully request that this Court dismiss with prejudice Plaintiff's First Amended Complaint for the reasons stated herein.

/s/ Angelique Groza Lyons
Angelique Groza Lyons, Esq., Fla. Bar No. 118801
alyons@constangy.com
CONSTANGY, BROOKS, SMITH & PROPHETE, LLP
100 North Tampa Street, Suite 3350
Post Office Box 1840
Tampa, Florida  33601-1840
(813) 223-7166 / Fax:  (813) 223-2515
tampa@constangy.com
Attorney for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of April, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document

---

[18] Plaintiff has already conceded that he is a "minister" under the ministerial exception.  *See* Doc. 23, at 2.

[19] To be sure, the ministerial exception bars Plaintiff's state law claim as well as his Title VII claim.  *See Fratello*, 863 F.3d at 206 (ministerial exception barred discrimination claims under state law and Title VII); *Conlon v. InterVarsity Christian Fellowship*, 777 F.3d 829, 836–37 (6th Cir. 2015) ("[B]ecause the Establishment and Free Exercise Clauses apply to the States through the Fourteenth Amendment by incorporation, the federal right would defeat any [state] statute that, as applied, violates the First Amendment."); *see also Hosanna-Tabor*, 565 U.S. at 194 n.3 (suggesting that if the ministerial exception bars a retaliation claim under federal law, "it is also bars [a] retaliation claim under [state] law.").

is being served on this day on all counsel of record or pro se parties identified on the following Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Angelique Groza Lyons
Attorney

**<u>SERVICE LIST</u>**
**RIVERA V. DIOCESE OF VENICE IN FLORIDA, INC.**
**CASE NO.: 20-14414-CIV-CANNON**

J. Kemp Brinson
Fla. Bar. No. 752541
BLOODWORTH LAW, PLLC
801 N. Magnolia Ave., Suite 216
Orlando, Florida 32803
(407) 777-8541
kbrinson@lawyerfightsforyou.com
eo'malley@lawyerfightsforyou.com
Attorney for Plaintiff
Served via CM/ECF

12

7365984v.1