THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

| | |
|---|---|
| Jorge Rivera,<br>         Plaintiff<br>v.<br>Diocese of Venice in Florida, Inc., and St. Catherine Parish in Sebring, Inc.<br>         Defendant | Case No: 2:20-cv-14414-AMC |

### RESPONSE TO MOTION TO DISMISS AND MEMORANDUM OF LAW

Plaintiff, Jorge Rivera, responds in opposition to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (the "Motion")(Doc. 31).

#### SUMMARY

Plaintiff, Jorge Rivera was the principal at a Catholic school in Sebring, Florida. Defendants are two entities within the hierarchical organization of the Catholic Church: the church where the school was located and the diocese that operated the school. Plaintiff filed suit under Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act alleging a hostile work environment on the basis of race and color and (originally) retaliation after he complained. Among the many adverse actions he endured were the priest at the church where he worked implicitly called him a "ni*ger" in front of his staff and the "chocolate principal." After he complained about the conduct, no remedial steps were taken and the adverse treatment of Principal Rivera by the priest grew in intensity and frequency.

1

Defendants moved to dismiss (Doc. 16) the original complaint (Doc. 1). A hearing was held on March 17, 2021, at which detailed substantive arguments were made. Principal Rivera conceded that dismissal of the retaliation counts (but not the hostile work environment claims) would be appropriate. The Court deferred a ruling on the merits of the motion to dismiss, expressly declined to make any decision on whether the hostile work environment claims passed muster as pleaded, and instead granted leave to amend the complaint (Doc. 28).

Principal Rivera filed a First Amended Complaint on April 25, 2021 (Doc. 29). The First Amended Complaint asserts only claims for a hostile work environment under Title VII (Count I) and analogous state law (Count II), not retaliation. In response, the Defendants filed the instant Motion to Dismiss (Doc. 31). The matter now before the Court is, essentially, a narrower version of the matters raised in the first motion to dismiss and discussed at the March 17, 2021, hearing and, indeed, much of the text of this response is identical. The new Motion to Dismiss focuses solely[1] on the way in which the ministerial exception does or does not apply to hostile work environment claims.

The instant Motion asserts two arguments in favor of dismissal of the Amended Complaint:

(1) That Plaintiff's claims are barred by the ministerial exception because, Defendants assert, <u>all</u> Title VII and related state law claims are categorically barred by the ministerial exception;

---

[1] The Defendants' first Motion to Dismiss (Doc. 16) also asserted that Plaintiff failed to allege sufficiently severe or pervasive actions to state to claim for a hostile work environment, but they do not appear to make this argument with respect to the First Amended Complaint.

> (2) Alternatively, if the ministerial exception is not a categorical bar to all Title VII claims, that these specific claims are nonetheless barred because, Defendants assert, resolving this particular dispute would require excessive entanglement in religion.

As before, Plaintiff concedes that he is a "minister" for the purposes of the ministerial exception. Nonetheless the Motion should fail because:

> (1) The ministerial exception does not act as a categorical bar to all Title VII claims by ministers.
>
> (2) Resolving this case will not involve excessive entanglement in religion. There are no known tenets of the Catholic faith or church governance that justify, for example, referring to black men at work as "ni*gers," or failing to take corrective action when a complaint about such conduct is made.

Defendants correctly point out that the analysis under state law is the same as under Title VII. This Response will use "Title VII" as a shorthand, but the points made apply equally to Plaintiffs state and federal claims.

ARGUMENT

**A.   The ministerial exception does not act as a categorical bar to all Title VII claims by ministers.**

This case does not arise out of a decision by Defendants to terminate Mr. Rivera. Instead, this case arises out of a hostile work environment on the basis of race and color. Plaintiff concedes that, had Defendants terminated him, he would not have a claim for

3

wrongful termination under Title VII. Such a decision would be protected by the ministerial exception under current precedent.

Furthermore, this case does not arise out of a decision by Defendants to engage in religiously motivated adverse treatment of Mr. Rivera – i.e., the Defendants presumably do not argue that the harassment Plaintiff endured was religiously justified. Surely, the Catholic Church is not taking the position that when the priest sang "what the ni*ger wants, the ni*ger gets," in to Principal Rivera (Amended Complaint, ¶ 34-39) that this was a message from God. Plaintiff concedes that, had Defendants subjected to him to a hostile work environment because of a good faith religious belief, however repugnant that belief, he would not have a claim for a hostile work environment.

Instead Defendants ask this Court to apply the ministerial exception as a blanket bar to *all* claims of discrimination and harassment, of any sort, by all "ministers," no matter how egregious the conduct or how far afield from religious entanglement an inquiry into that conduct will be. Defendants cite to the only Eleventh Circuit precedent on this issue, *Gellington v. Christian Methodist Episcopal Church, Inc.*, 203 F.3d 1299, 1304 (11th Cir. 2000) in support of this proposition. ("For the foregoing reasons, we find that the Free Exercise and Establishment Clauses of the First Amendment prohibit a church from being sued under Title VII by its clergy.") *Id.* at 1304. However, a careful examination of *Gellington* and subsequent Supreme Court precedent reveals that the exception is not so sweepingly broad as to grant Defendants blanket immunity from all discrimination and harassment claims.

Crucially, *Gellington* did not address a hostile work environment claim, only a retaliation claim. Further, the retaliation claim was by a minister who alleged that he quit in lieu of being reassigned to another church 800 miles away after he helped a colleague

complain about sexual harassment. On the unique facts before it, the *Gellington* decision was arguably consistent with prior and subsequent precedent applying the ministerial exception. The courts should not, it is argued, entangle themselves in decisions about which clergy members to place at which churches, even when the church appears to have had repugnant motives for doing so. "A church's view on whether an individual is suited for a particular clergy position cannot be replaced by the courts without entangling the government 'in questions of religious doctrine, polity, and practice.'" *Gellington* 203 F.3d 1299, 1304, *citing Jones v. Wolf,* 443 U.S. 595, 603 (1979). But *Gellington's* broad pronouncement that the exception bars *all* Title VII claims by ministers, including claims that do not involve, for example, decisions to re-assign a minister to another parish, goes beyond the facts before it and does not survive the U.S. Supreme Court's more nuanced approach in later cases.

The Supreme Court has only gone so far as to endorse the ministerial exception as a bright-line, threshold bar to claims that would interfere with a church's right to select and terminate its clergy. With respect to other claims arising under other adverse employment actions, the Court has left it up to lower courts to conduct an analysis of the degree to which the actual claim alleged would unduly entangle the courts in an ecclesiastical matter.

The two most relevant Supreme Court cases are *Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC*, 566 U.S. 171 (2012) and *Our Lady of Guadalupe School v. Morrissey-Berru*, 140 S. Ct. 2049 (2020).

In the 2012 decision in *Hosanna-Tabor*, the Court considered the case of a Lutheran school teacher who alleged she was wrongfully terminated in violation of the Americans with Disabilities Act ("ADA") and considered whether "the Establishment and Free Exercise Clauses of the First Amendment bar such an action when the employer is a religious group

and the employee is one of the group's ministers." *Hosanna-Tabor*, 566 U.S. 171 at 176. The employee claimed that she had threatened to file an ADA lawsuit and was fired in retaliation for doing so. Much of the discussion in *Hosanna-Tabor* concerned the question of whether the employee was a "minister" or not, which is not at issue here. The theoretical underpinnings of the ministerial exception discussed in *Hosanna-Tabor* reveal that it was not intended as a threshold bar to all claims made by ministers against their employers, only to claims that would interfere with a church's authority to select its own leaders.

For example, the Court noted that "The scrupulous policy of the Constitution in guarding against a political interference with religious affairs…prevented the Government from rendering an opinion on the selection of ecclesiastical individuals." *Hosanna-Tabor* 565 U.S. 171, 184, *citing* James Madison, Letter to Bishop Carroll (Nov. 20 1806), 20 Records of the American Catholic Historical Society 63-64 (1909). "[I]t is impermissible for the government to contradict a church's determination of who can act as its ministers." *Hosanna-Tabor* 565 U.S. 171, 185. Of key importance to the Court was that the case before it "concern[ed] government interference with an internal church decision that affects the faith and mission of the church itself." *Id.* at 190. The Court distinguished between "government's regulation of physical acts" and "lend[ing] its power to one or the other side in controversies over religious authority or dogma." *Id. citing Employment Div., Dept. of Human Resources of Ore. v. Smith,* 494 U.S. 872 (1990). The Court was concerned about awarding relief that "would operate as a penalty on the Church for terminating an unwanted minister." *Hosanna-Tabor* 565 U.S. 171, 194. These theoretical underpinnings are not implicated when the church is being held accountable for failing to protect a minister from harassment by a co-worker.

The Supreme Court expressly limited its decision to the facts before it and declined to give its holding the effect of broad rule. "We express no view on whether the exception

bars other types of suits, including actions by employees alleging breach of contract or tortious conduct by their religious employers. There will be time enough to address the applicability of the exception to other circumstances if and when they arise." *Id.* at 196. The enumerated list of actions outside the scope of the decision was non-exclusive and could easily have included Title VII hostile work environment cases that, based on the circumstances thereof, did not invoke matters of religious entanglement. The decision simply does not say what Defendants say it says: it does not support the proposition that all Title VII claims are categorically barred by the ministerial exception.

In *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049 (2020), the Court addressed an employee who was terminated. Like in *Hosanna-Tabor*, it spent the bulk of its energies discussing who was or was not a "minister" to whom the ministerial exception applies. The Court again declined to set rules on what other types of cases may or may not be cognizable. "Respondents argue that the *Hosanna-Tabor* exception is not workable unless it is given a rigid structure, but we declined to adopt a 'rigid formula' in *Hosanna-Tabor*, and the lower courts have been applying the exception for many years without such a formula. Here, as in *Hosanna-Tabor*, it is sufficient to decide the cases before us." *Id.* at 2069.

Thus, the Supreme Court has never held that the ministerial doctrine categorically bars all claims for harassment or retaliation, and twice, in decisions issued after *Gellington*, expressly declined to endorse broad, sweeping bright line rules like the Eleventh Circuit did previously in *Gellington*. The Supreme Court has endorsed a more nuanced approach that asks trial courts to consider the degree to which resolution of a claim would involve excessive entanglement in religious matters. The *Gellington* holding should not be read so broadly as to apply to cases that do not involve the same level of entanglement with a clerical decision as the specific facts of *Gellington* did. Moving Mr. Rivera to another school, had the Defendants

7

done that, would have been a protected church decision. His priest calling him a "ni*ger," and failing to protect Principal Rivera from additional harassment by the priest after a complaint was made, were unprotected, secular acts.

Only one Circuit Court of Appeal, the Tenth, has expressly endorsed the approach advocated by Defendants in a hostile work environment case, and it did so prior to both *Hosanna-Tabor* and *Our Lady of Guadalupe Sch.*, in *Skrzypczak v. Roman Catholic Diocese Of Tulsa*, 611 F.3d 1238, 1246 (10th Cir. 2010) ("Thus, we hold that because Appellant is a minister for purposes of the exception, her Title VII hostile work environment claim is barred.") However, the Tenth Circuit is an outlier. It is at odds with two decisions from the Ninth Circuit, a panel decision vacated pending rehearing *en banc* in the Seventh, and numerous decisions of terminal state courts and federal district courts. The Defendants assert that an earlier Seventh Circuit case is consistent with their position, but that case, *Alicea-Hernandez v. Catholic Bishop of Chicago*, 320 F.3d 698 (7th Cir. 2003), suffers from the same fatal flaw that *Gellington* does: it was not a hostile work environment claim. Only the Tenth Circuit has held as Plaintiff requests this Court to hold.

The most direct counterpoint to *Skrzypczak* comes from the Ninth Circuit. In *Bollard v. California Province of the Soc'y of Jesus*, 196 F.3d 940, 944 (9th Cir. 1999), the employee made similar allegations as here – harassment and constructive discharge. "Bollard alleges that, between 1990 and 1996, he was sexually harassed by his Jesuit superiors at the St. Ignatius College Preparatory School in San Francisco and at the Jesuit School of Theology in Berkeley, California. He claims that various superiors at these two institutions sent him pornographic material, made unwelcome sexual advances, and engaged him in inappropriate and unwelcome sexual discussions. Between mid–1995 and 1996, Bollard reported the harassment to superiors within the Jesuit order, but, so far as he knows, his reports prompted

no corrective action. He alleges that the harassing conduct was so severe that he was forced to leave the Jesuit order in December 1996 before taking vows to become a priest." *Bollard*, 196 F.3d 940, 944.

The District Court dismissed the complaint, finding the claim to be barred by the ministerial exemption. The Circuit Court reversed, finding the ministerial exemption inapplicable to claims of harassment and constructive discharge. Most importantly, just like the two Supreme Court cases noted above, the Ninth Circuit identified the key issue as being whether resolution of the claim would require the Court to pass judgment on questions of religious faith or doctrine. As in the present case, resolving the claim would not require the Court to make such judgments:

> "In this case, as in the case of lay employees, the Free Exercise rationales supporting an exception to Title VII are missing. The Jesuits do not offer a religious justification for the harassment Bollard alleges; indeed, they condemn it as inconsistent with their values and beliefs. There is thus no danger that, by allowing this suit to proceed, we will thrust the secular courts into the constitutionally untenable position of passing judgment on questions of religious faith or doctrine. The Jesuits' disavowal of the harassment also reassures us that application of Title VII in this context will have no significant impact on their religious beliefs or doctrines…
>
> Moreover, this is not a case about the Jesuit order's choice of representative, a decision to which we would simply defer without further inquiry. Bollard does not complain that the Jesuits refused to ordain him or engaged in any other adverse personnel action… It is true that Bollard alleges constructive discharge, but unlike actual discharge, constructive discharge does not refer to a decision by the Jesuits to terminate Bollard's employment. Instead, constructive discharge in the context of Bollard's Title VII sexual harassment claim functions only to signal his estimation of the severity of the harassment and to lay the foundation for including lost wages in a calculation of damages." *Bollard,* 196 F.3d 940, 947.

9

Later, in 2004, the Ninth Circuit made a similar decision on similar facts in *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951 (9th Cir. 2004), finding that while termination of employment of a minister was not actionable, the employee's hostile work environment and retaliation claims were.

*Bollard* and *Elvig* have been very influential in other Circuits and various federal district and state appellate courts.

Like the Ninth Circuit, a panel decision from the Seventh Circuit recently expressly adopted the logic of *Bollard*. That decision was vacated pending rehearing *en banc* and oral arguments were held on February 9, 2021.[2] *Demkovich v. St. Andrew the Apostle Par., Calumet City*, 973 F.3d 718 (7th Cir. 2020), *reh'g en banc granted, opinion vacated* (Dec. 9, 2020). That decision would have refined and limited the more *Gellington*-like, broad, sweeping approach of *Alicea-Hernandez v. Catholic Bishop of Chicago*, 320 F.3d 698, 703 (7th Cir. 2003). If the Court is searching for indications of what the Eleventh Circuit should or would do on a similar case, the logic of the *Demkovich* panel opinion, which had to contend with the *Gellington*-like holding of *Alicea-Hernandez*, is compelling persuasive authority.

It is well-settled that there is a ministerial exception and that it categorically bars all wrongful termination claims. But other than the Ninth, Seventh, and Tenth Circuits, no other Circuit Court has expressly ruled on the question of whether the ministerial exception categorically bars hostile work environment claims under Title VII and similar laws.

---

[2] At the *en banc* oral argument, the judges appeared very skeptical of the sweeping rule advocated by the church in that case, which was identical to the position taken by Defendants here. (http://media.ca7.uscourts.gov/sound/external/ds.19-2142.19-2142_02_09_2021.mp3, last accessed 2/12/2021).

However, *Bollard* and *Elvig* have been cited favorably in dicta in the Second Circuit,[3] Third Circuit,[4] Fourth Circuit,[5] and Sixth Circuit[6] for the proposition that harassment or certain other non-terminal employment claims may be available to ministers. The theme of these cases is that the ministerial exemption only bars those particular claims for which the inquiry will necessarily lead to excessive entanglement in matters of faith.

Several terminal state courts have expressly stated that the ministerial exception does not bar all claims asserting a hostile work environment and/or retaliatory harassment,

---

[3] "Moreover, although its name might imply an absolute exception, it is not always a complete barrier to suit; for example, a case may proceed if it involves a limited inquiry that, 'combined with the ability of the district court to control discovery, can prevent a wide-ranging intrusion into sensitive religious matters.'" *Rweyemamu v. Cote*, 520 F.3d 198, 207 (2d Cir. 2008), *citing Bollard*.

[4] "We acknowledge that it may not always be clear whether a minister's Title VII claim involves a church's decision regarding who will perform spiritual functions." *Petruska v. Gannon Univ.*, 462 F.3d 294, 308 n11 (3d Cir. 2006), *citing Elvig*.

[5] "While the ministerial exception promotes the most cherished principles of religious liberty, its contours are not unlimited and its application in a given case requires a fact-specific inquiry. The ministerial exception does not insulate wholesale the religious employer from the operation of federal anti-discrimination statutes." *E.E.O.C. v. Roman Catholic Diocese of Raleigh, N.C.*, 213 F.3d 795, 801 (4th Cir. 2000), *citing Bollard*.

[6] "[T]he court warned that if the church claimed that the sexual harassment was doctrinal, jurisdiction would be foreclosed by the First Amendment… However, since the church in that case had not claimed doctrinal status for the alleged actions, the court allowed the case to proceed." *Ogle v. Hocker*, 279 Fed. Appx. 391, 395 (6th Cir. 2008), *citing Elvig*.

including in Colorado,[7] Maryland,[8] and New Jersey.[9] Other terminal state courts have been more equivocal but nonetheless supportive, noting that the ministerial exception may not protect churches from all Title VII claims by clergy, including in Connecticut[10] and Michigan[11] and that the inquiry must involve an analysis of likely entanglement, not application of a sweeping, bright line rule. An intermediate Minnesota appellate court has expressly found that hostile work environment claims are not barred by the ministerial exception.[12]

---

[7] "Our holding does not bar the large number of non-clergy employees from suing the church on discrimination claims. It does not even bar ministers from bringing employment discrimination claims that do not stem directly from a hiring or discharge decision." *Van Osdol v. Vogt*, 908 P.2d 1122, 1129 (Colo. 1996). "As Justice Mullarkey states in her concurrence, if Van Osdol had brought a claim regarding a hostile work environment instead of claims directly related to the church's decision not to hire her, such a claim might have survived a First Amendment bar." *Id.* at 1129.

[8] "[We] therefore hold that the ministerial exception does not operate to bar every claim of sexual harassment asserted against church officials by a former ministerial employee." *Prince of Peace Lutheran Church v. Linklater*, 421 Md. 664, 691, 28 A.3d 1171, 1186 (2011).

[9] "Obviously, sexual harassment is not doctrinally based, a protected choice, or inherent in church administration… Thus, there would have been no First Amendment prohibition against McKelvey's proving a Title VII case of sexual harassment." *McKelvey v. Pierce*, 173 N.J. 26, 55, 800 A.2d 840, 858 (2002).

[10] "[We] conclude that, in an employment related action against a religious institution, even if it is established that the plaintiff's primary duties render him a ministerial employee… Connecticut courts must consider whether adjudicating the particular claims and defenses in the case would require the court to intrude into a religious institution's exclusive right to decide matters pertaining to doctrine or its internal governance or organization." *Dayner v. Archdiocese of Hartford*, 301 Conn. 759, 784, 23 A.3d 1192, 1207–08 (2011), *citing Rweyemamu,* 520 F.3d at 208–209.

[11] "Thus, some claims by ministerial employees are not necessarily foreclosed by the ministerial exception." *Weishuhn v. Lansing Catholic Diocese*, 787 N.W.2d 513, 522 (Mich. Ct. App. 2010), *citing Elvig.*

[12] "We recognize that sexual discrimination inheres in the pastoral appointments of some churches and has been granted, in effect, a constitutional exemption under both the free

The logic of *Bollard* and *Elvig* has also been followed explicitly by several U.S. District Courts, including in Kansas,[13] the Western District of New York,[14] the Northern District of Ohio,[15] and in Oregon.[16] A similar conclusion was noted, without citation to *Bollard* or *Elvig*, in the Northern District of Illinois.[17]

---

exercise and establishment clauses. However, no court has extended a similar protection over sexual harassment claims based on conduct during the employment relationship… We hold, therefore, that the first amendment does not bar Black from litigating her sexual harassment claim. *Black v. Snyder*, 471 N.W.2d 715, 720–21 (Minn. Ct. App. 1991).

[13] "Based on *Elvig, Bollard, McKelvey* and *Black*, the Court finds that the First Amendment does not preclude plaintiff from stating a claim for sexual harassment." *Dolquist v. Heartland Presbytery*, 342 F. Supp. 2d 996, 1007 (D. Kan. 2004).

[14] "[T]he ministerial exception '[…] is not always a complete barrier to suit'; for example, a case may proceed if it involves a limited inquiry that, 'combined with the ability of the district court to control discovery, can prevent a wide-ranging intrusion into sensitive religious matters.' … The Court has no facts before it from which it could conclude that Plaintiff's hostile environment claim would violate DOR's First Amendment rights. Accordingly, Defendants' applications to dismiss the hostile environment claims pursuant to Rule 12(b)(1) are denied." *Rojas v. Roman Catholic Diocese of Rochester*, 557 F. Supp. 2d 387, 399 (W.D.N.Y. 2008), *citing Rweyemamu, Elvig*, and *Bollard*.

[15] "Accordingly, the court concludes that a minister's hostile work environment claim can survive the ministerial exception—at least when the claim does not entail excessive entanglement with religious matters. And after examining Middleton's first cause of action, the court concludes that it does not implicate any matters of church doctrine or practice. As discussed below, Middleton's hostile workplace claim involves allegations of racial and gender harassment that are wholly unrelated to Defendants' religious teachings. Defendants do not claim that such insults are part of UCC policies or religious beliefs. Nor do Defendants offer any other explanation in response to Middleton's allegations." *Middleton v. United Church of Christ Bd.*, 1:19 CV 1899, 2020 WL 7392762, at *5 (N.D. Ohio Aug. 26, 2020), *citing Ogle*, 279 F. App'x at 396.

[16] *Walsh v. Calvin Presbyterian Church of Tigard, Or.*, CV 06-1581-AS, 2007 WL 3170999, at *6 (D. Or. Oct. 26, 2007), explicitly following *Elvig*.

[17] "But there are strains of Garrick's Title VII claims that may not be tied to Moody's religious beliefs. For instance, Garrick complains of antagonistic treatment by male colleagues and inconsistent treatment of female and male faculty members by the administration with respect to job duties, employment requirements, and performance reviews. To the extent

The law in this area is not settled however, and, unlike Defendants, Plaintiff will not pretend that it is. Besides the Tenth Circuit in *Skrzypczak*, Plaintiff's position has also been endorsed in federal district courts in Nebraska,[18] the Middle District of North Carolina,[19] and the Eastern District of Pennsylvania.[20]

*Bollard, Elvig,* and the panel decision in *Demkovich* are more on-point than *Gellington* and more closely aligned with the logic used by the Supreme Court in *Hosanna-Tabor* and *Our Lady of Guadalupe Sch.* than *Skrzypczak*. The ministerial exception operates as a bright-line categorical bar only to wrongful termination and retaliatory discharge claims under Title VII because such claims will always involve undue entanglement with a church's autonomy to select its own clergy. But it does not operate as a categorical bar to all Title VII claims. In particular, the ministerial exception does not categorically bar claims of a hostile work environment. Such claims are only barred if the church can demonstrate, under the unique facts of that case, that determining the claim will necessarily involve excessive entanglement with religious doctrine, policy, and practice. The Court should decline to adopt the Defendants' overly broad interpretation of *Gellington*.

---

Garrick can state a claim concerning these issues in a way that is untethered from her disagreements with Moody's religious views, she may be able to pursue those claims." *Garrick v. Moody Bible Inst.*, 412 F. Supp. 3d 859, 872 (N.D. Ill. 2019).

[18] *Preece v. Covenant Presbyterian Church*, 8:13CV188, 2015 WL 1826231, at *7 (D. Neb. Apr. 22, 2015), *Ogugua v. Archdiocese of Omaha*, No. 8:07CV471, 2008 WL 4717121 (D.Neb. October 22, 2008).

[19] *Gomez v. Evangelical Lutheran Church in Am.*, 1:07CV786, 2008 WL 3202925 (M.D.N.C. Aug. 7, 2008).

[20] *Koenke v. Saint Joseph's Univ.*, CV 19-4731, 2021 WL 75778, at *4 (E.D. Pa. Jan. 8, 2021) (currently on appeal to the Third Circuit, case no. 21-1057).

### B.   Resolving this particular claim will not involve excessive entanglement with religion.

Defendants argue that, even if hostile work environment claims are not categorically barred by the ministerial exception, this particular hostile work environment claim is because, according to them, resolving it will involve excessive entanglement with religion.

It is worth considering what "excessive entanglement" actually means. It refers to situations in which the Court second-guesses a church's decision, challenging its autonomy. It does not necessarily refer to situations in which a matter of church government is merely evidence of some other non-protected actionable conduct. The exception "…does not mean that religious institutions enjoy a general immunity from secular laws, but it does protect their autonomy with respect to internal management decisions that are essential to the institution's central mission." *Our Lady of Guadalupe School v. Morrissey-Berru*, 140 S. Ct. 2049 at 2060 (2020). The ministerial exception flows from the concept that "[t]he First Amendment protects the right of religious institutions to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Id.*, at 2052, citing *Kedroff v. Saint Nicholas Cathedral of Russian Orthodox Church in North America*, 344 U.S. 94 at 116, 73 (1952). It is not the case that every actionable situation that a minister might encounter at work falls under this umbrella of protection. Some of them will not involve interference with official matters of church government.

The gravamen of the Amended Complaint is that Principal Rivera was subjected to racial and racially motivated harassment by his co-worker, Father Gonzalez. Contrary to the Defendants' assertion (Motion, p. 8 n9), the Complaint clearly alleges that Father Gonzalez was not Principal Rivera's supervisor (Amended Complaint, ¶ 46). The superintendent was

his supervisor (¶ 13). As pointed out by Defendants, Principal Rivera indeed alleges that the superintendent subjected him to "additional scrutiny and micromanagement," and that his role was "minimized", but Defendants miss the point of these allegations. Plaintiff does not allege these acts are actionable. Rather, these acts are merely evidence of the fact that his co-worker, Father Gonzalez, was harassing him and subjecting him to a hostile work environment by sharing lies to Principal Rivera's supervisor. The issue is not what specific church governance action they took, the issue is what they did not do: they did not stop the harassment. Defendants selectively edit the allegations of paragraphs 45-60 of the Amended Complaint in its Motion in order to make it appear that Plaintiff is suing over the management decisions. Each of these lies makes it clear that Father Gonzalez was actively trying to make Principal Rivera's life difficult. Plaintiff is suing over Father Gonzalez's conduct, and the church's failure to stop it.

The church's response to the harassment is compelling evidence that the church ignored the complaint and allowed the harassment to continue. The ministerial exception does not protect it from its responsibility to ensure that its workplace is free of racial harassment. The exception "…does not mean that religious institutions enjoy a general immunity from secular laws…" *Our Lady of Guadalupe School*, 140 S. Ct. at 2060. Unless the church can point to the matter of "church government", "faith," or "doctrine" that compelling it to ensure that Father Gonzalez's racism did not make Principal Rivera's life miserable will interfere with, the Motion should fail.

### C.     Effect of Grant of Motion to Dismiss

Defendants seek dismissal with prejudice. This is the first time the sufficiency of allegations will have been ruled upon on the merits. Plaintiff concedes that, should this Court

find that the ministerial exception categorically bars <u>all</u> Title VII claims by ministers, amendment would be futile. However, if the Court grants the Motion based on the second argument propounded by Defendants, Plaintiff should be given an opportunity to amend the Complaint, and hereby requests an opportunity to do so to the extent the Motion is granted. See *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).

WHEREFORE, Plaintiff, Jorge Rivera requests that the Motion to Dismiss be DENIED.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 7, 2021, a true and correct copy of the foregoing was filed with the Clerk of the Court using the ECF system which will send a copy to all participants, including Angelique Groza Lyons, Esq., counsel for Defendants.

/s/ J. Kemp Brinson
J. Kemp Brinson
Fla. Bar No. 752541
BLOODWORTH LAW, PLLC
801 N. Magnolia Ave. Suite 216
Orlando, FL 32803
407-777-8541
KBrinson@LawyerFightsForYou.com
EUpshur@LawyerFightsForYou.com
Attorney for Plaintiff