UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 20-14414-CIV-CANNON

JORGE RIVERA,

      Plaintiff,

v.

DIOCESE OF VENICE IN FLORIDA, INC.
and ST. CATHERINE PARISH IN SEBRING, INC.

      Defendants.

_____/

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO MOTION
TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
AND INCORPORATED MEMORANDUM OF LAW**

      Defendants Diocese of Venice in Florida, Inc. and St. Catherine Parish in Sebring, Inc. (collectively "Defendants") hereby submit their Reply memorandum in support of their Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 31) ("Motion").  The Motion sets forth all the reasons Plaintiff Jorge Rivera's ("Plaintiff") First Amended Complaint should be dismissed with prejudice.  However, Plaintiff raises a few points in his Response (Doc. 34) that warrant brief discussion.

**ARGUMENT**

**I.**      **Plaintiff concedes that he is a "minister" for purposes of the ministerial exception and therefore, his claims are barred.**

      As he did in his original response, Plaintiff concedes that he qualifies as a "minister" under the ministerial exception.  *See* Doc. 34, at 3.  This concession is fatal to his claims.  Nevertheless, in an attempt to survive dismissal, Plaintiff tries once more to confine the broad scope of the ministerial exception.  Specifically, he argues that the exception purportedly does not apply to any employment discrimination claims, including his hostile work environment claims under Title VII

and the FCRA, unless "determining the claim[s] will necessarily involve excessive entanglement with religious doctrine, policy, and practice." *Id.* at 14. In making this argument, he unsuccessfully attempts to distinguish the Eleventh Circuit's binding decision in *Gellington*, makes conflicting statements about relevant Supreme Court decisions, and otherwise relies on non-binding authority from state courts and federal courts outside of the Eleventh Circuit. In the end, by arguing that the ministerial exception applies to some employment discrimination claims and not others, Plaintiff effectively urges the Court to do what he acknowledges the Supreme Court has twice declined to do: "to set rules on what . . . types of cases may or may not be cognizable." *Id.* at 7; *see, e.g.*, *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2069 (2020); *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 190 (2012).

First, Plaintiff unsuccessfully attempts to distinguish the Eleventh Circuit's decision in *Gellington*. Although he correctly notes that *Gellington* did not involve a hostile work environment claim, the plaintiff in that case made allegations very similar to those made by Plaintiff. In particular, the *Gellington* plaintiff alleged, as Plaintiff does here, that he was constructively discharged after he complained about harassment. 203 F.3d 1299, 1301 (11th Cir. 2000). Further, similar to Plaintiff's allegation that his constructive discharge was preceded by Defendants making a number of administrative decisions without his input, the plaintiff in *Gellington* claimed that his constructive discharge was preceded by two administrative decisions made without his input—namely, his reassignment to another church and the reduction of his salary. *Id.* For some reason, Plaintiff appears to argue that reassignment is the only administrative decision short of termination that is a "protected church decision." Doc. 34, at 7–8. This argument is particularly confusing given that the *Gellington* court did not reference the plaintiff's alleged reassignment whatsoever in analyzing whether the ministerial exception applied to his claims.

2

Instead, the court broadly referred to "matters of church governance and administration," and "the employment relationship between a church and its clergy" before ultimately reasoning that, "[a] church's view on whether an individual is suited for a particular clergy position cannot be replaced by the courts' without entangling the government 'in questions of religious doctrine, polity, and practice.'" *Gellington*, 203 F.3d at 1304. Certainly, a church can express its view on whether one is suited for a clergy position in more ways than merely reassigning that individual. For instance, Defendants could be said to have been expressing their views on Plaintiff's suitability for his position as principal based upon Plaintiff's allegations that:

- A teacher at the School was terminated without Plaintiff's knowledge or input;[1]
- The Diocese's Superintendent of Catholic Education, Benjamin Moore, subjected Plaintiff to "additional scrutiny and micromanagement";[2]
- Superintendent Moore told Plaintiff, "If you don't improve you will not be renewed.";[3]
- Plaintiff's role was "minimized" by Father Gonzalez and Superintendent Moore;[4] and
- Father Gonzalez held meetings without Plaintiff, supervised and disciplined Plaintiff's staff, and "shar[ed] lies about [Plaintiff] with Fr. Gonzalez and the Diocese concerning his job performance."[5]

Thus, contrary to Plaintiff's argument, *Gellington* is very similar to the instant action and as such, the Court should similarly hold that the ministerial exception "prohibit[s] a church from being sued under Title VII by its clergy." 203 F.3d at 1304.

Attempting to circumvent the Eleventh Circuit's binding decision in *Gellington*, Plaintiff argues that the Supreme Court's post-*Gellington* decisions in *Hosanna-Tabor* and *Our Lady of*

---

[1] Doc. 29, at ¶ 27.

[2] *Id.* at ¶ 45.

[3] *Id.* at ¶ 47.

[4] *Id.* at ¶ 49.

[5] *Id.* at ¶ 57.

*Guadalupe* require an analysis of whether Plaintiff's alleged harassment would entangle the Court in an "ecclesiastical matter." Doc. 34, at 5. According to Plaintiff, since Defendants do not provide a religious justification for his alleged harassment, the Court may engage in a secular analysis, thus precluding the ministerial exception's application. However, the Supreme Court rejected this argument in *Hosanna-Tabor*, reasoning that it "misses the point of the ministerial exception." 565 U.S. at 194. Instead, as the Eleventh Circuit stated, the purpose of the exception is to "continue[] a long-standing tradition that churches are to be free from government interference in matters of church governance and administration." *Gellington*, 203 F.3d at 1304; *see also Alicea-Hernandez v. Catholic Bishop of Chicago*, 320 F.3d 698, 703 (7th Cir. 2003) ("It is … not [courts'] role to determine whether the Church had a secular or religious reason for the alleged mistreatment of [a plaintiff]. The only question is that of the appropriate characterization of her position."); *EEOC v. Roman Catholic Diocese*, 213 F.3d 795, 802 (4th Cir. 2000) ("The church need not … proffer any religious justification for its decision, for the Free Exercise Clause protects the act of a decision rather than a motivation behind it.") (citation and quotation marks omitted). Indeed, "the very process of inquiry" violates the Religion Clauses upon which the ministerial exception is based. *N.L.R.B. v. Catholic Bishop of Chicago*, 440 U.S. 490, 502 (1979).

Nevertheless, Plaintiff attempts to support this argument by citing to the Ninth Circuit's pre-*Hosanna-Tabor* decision in *Bollard v. California Province of the Soc'y of Jesus*, 196 F.3d 940, 945 (9th Cir. 1999). Notably, in refusing to apply the ministerial exception to claims of harassment and constructive discharge, the *Bollard* court relied upon the same flawed reasoning upon which Plaintiff now relies—i.e., that the defendant lacked a "religious justification" for the alleged harassment. 196 F.3d at 947. The alleged harassment as plead by Plaintiff includes multiple allegations that go to the heart of the ministerial exception, and require the Court to determine

4

whether Defendants took these actions because of Plaintiff's race or for other reasons related to church governance. Merely asking the Court to make this determination violates the First Amendment.

Plaintiff also tries to bolster his argument that the ministerial exception does not apply to his hostile work environment claims by mistakenly asserting that only the Tenth Circuit has applied the exception to such claims. *See* Doc. 34, at 8 (citing *Skrzypczak v. Roman Catholic Diocese Of Tulsa*, 611 F.3d 1238, 1246 (10th Cir. 2010)). As noted in Defendants' Motion, however, the Seventh Circuit likewise applied the exception to a hostile work environment claim in *Alicea-Hernandez*. *See* Doc. 31, at 5–6. Although the court's opinion in that case merely provided that the plaintiff alleged discrimination claims, the plaintiff explicitly stated in her appellate brief that her claims were based on "the hostile work environment she experienced." Brief of Plaintiff-Appellant Gloria Alicea-Hernandez, 2002 WL 32172619, at *16 (7th Cir. 2002). Accordingly, both the Seventh and Tenth Circuits have applied the exception to hostile work environment claims.

## II.     Plaintiff's claims will require the Court to excessively entangle itself into Defendants' internal governance.

In his Response, Plaintiff attempts to reframe his allegations to make it appear that the Court may examine his claims without impermissibly inquiring into Defendants' internal governance. Plaintiff's attempts are unavailing. Specifically, he downplays his allegations that he was subjected to "additional scrutiny and micromanagement" and that administrative decisions were made without his knowledge or involvement, arguing that he does not allege these acts are actionable. Doc. 34, at 16. Instead, Plaintiff states that these acts are "merely evidence" that Father Gonzalez "was harassing him and subjecting him to a hostile work environment by sharing lies to" Superintendent Moore. *Id.* As a result, notwithstanding his claim that his allegations

regarding administrative decisions are non-actionable, he appears to acknowledge that these allegations are intertwined with his other allegations of harassment by Father Gonzalez. Indeed, Plaintiff explicitly states that he "is suing over Father Gonzalez's conduct and the church's failure to stop it." *Id.* Given that Father Gonzalez's alleged conduct includes a number of acts that directly relate to Defendants' internal governance, the Court cannot examine these acts without violating the First Amendment. Further, determining whether Defendants are liable for harassment will require the Court to assess whether Defendants properly disciplined and/or corrected Father Gonzalez. This inquiry similarly implicates Defendants' operations and as a result, its right to self-govern which necessarily "requires the authority to … *supervise* … a minister without interference by secular authorities." *Our Lady of Guadalupe*, 140 S. Ct. at 2060 (emphasis added).

Accordingly, regardless of whether the Court views the ministerial exception as a categorical bar to all employment discrimination claims, it cannot analyze Plaintiff's claims without entangling itself into matters protected by the First Amendment. This is the very reason the ministerial exception was created—i.e., "to preserve a church's independent authority in such matters," *id.* at 2060–61—and the very reason why the exception requires the dismissal of Plaintiff's claims.

## III.  Plaintiff has already been granted leave to amend his Complaint and therefore, his First Amended Complaint should be dismissed with prejudice.

Plaintiff asserts that he should be given another opportunity to amend his Complaint if the Court grants Defendants' Motion on the basis that his claims will require the Court to excessively entangle itself into Defendants' internal governance. Doc. 34, at 16–17. Attempting to support this argument, Plaintiff cites to *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). Doc. 34, at 17. There, the Eleventh Circuit reversed the district court's dismissal of the plaintiffs' amended complaint with prejudice. *Bryant*, 252 F.3d at 1162–63. However, in so ruling, the court reasoned

6

that the plaintiffs' amended complaint, which was filed in response to the defendants' original motion to dismiss, "was filed as a matter of course, and until the renewed motion to dismiss came before the court, the plaintiffs had not asked for leave to amend." *Id.* at 1163–64.  Therefore, the court allowed the plaintiffs to amend their amended complaint because "it cannot be said that the plaintiffs already had been given an opportunity to amend." *Id.* at 1164.  Here, however, Plaintiff has already been granted leave to amend his Complaint.  *See* Doc. 28, at 1 ("Plaintiff is granted one final opportunity to amend his Complaint.").  Thus, if Plaintiff's First Amended Complaint is dismissed on any of the grounds raised in Defendants' Motion, it should be dismissed with prejudice.

<u>**CONCLUSION**</u>

WHEREFORE, Defendants respectfully request that this Court dismiss with prejudice Plaintiff's First Amended Complaint for the reasons stated herein and in Defendants' Motion to Dismiss.

/s/ Angelique Groza Lyons
Angelique Groza Lyons, Esq., Fla. Bar No. 118801
alyons@constangy.com
CONSTANGY, BROOKS, SMITH & PROPHETE, LLP
100 North Tampa Street, Suite 3350
Post Office Box 1840
Tampa, Florida  33601-1840
(813) 223-7166 / Fax:  (813) 223-2515
tampa@constangy.com
Attorney for Defendants

7440872v.1

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of May, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served on this day on all counsel of record or pro se parties identified on the following Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Angelique Groza Lyons
Attorney

## SERVICE LIST
### RIVERA V. DIOCESE OF VENICE IN FLORIDA, INC.
### CASE NO.: 20-14414-CIV-CANNON

J. Kemp Brinson
Fla. Bar. No. 752541
BLOODWORTH LAW, PLLC
801 N. Magnolia Ave., Suite 216
Orlando, Florida 32803
(407) 777-8541
kbrinson@lawyerfightsforyou.com
eo'malley@lawyerfightsforyou.com
Attorney for Plaintiff
Served via CM/ECF

8